Rockingham, }
June, 1898. }

PRESCOTT v. JONES & a.

A proposition to renew an insurance policy unless notified by the insured to the contrary will not bind the maker when there is no appropriate act to indicate its acceptance.

An estoppel cannot arise from a promise as to future action with respect to a right to be acquired upon an agreement not yet made.

ASSUMPSIT. The declaration alleged, in substance, that the defendants, as insurance agents, had insured the plaintiff's buildings in the Manchester Fire Insurance Company until February 1, 1897; that on January 23, 1897, they notified him that they would renew the policy and insure his buildings for a further term of one year from February 1, 1897, in the sum of $500, unless notified to the contrary by him; that he, relying on the promise to insure unless notified to the contrary, and believing, as he had a right to believe, that the buildings would be insured by the defendants for one year from February 1, 1897, gave no notice to them to insure or not to insure; that they did not insure the buildings as they had agreed and did not notify him of their intention not to do so; that the buildings were destroyed by fire March 1, 1897, without fault on the plaintiff's part. The defendants demurred.

*John T. Bartlett, Burnham, Brown & Warren,* and *Isaac W. Smith,* for the plaintiff.

*Drury & Peaslee,* for the defendants.

BLODGETT, J. While an offer will not mature into a complete and effectual contract until it is acceded to by the party to whom it is made and notice thereof, either actual or constructive, given to the maker (*Abbott* v. *Shepard,* 48 N. H. 14, 17; *Perry* v. *Insur-*

*ance Co.*, 67 N. H. 291, 294, 295), it must be conceded to be within the power of the maker to prescribe a particular form or mode of acceptance; and the defendants having designated in their offer what they would recognize as notice of its acceptance, namely, failure of the plaintiff to notify them to the contrary, they may properly be held to have waived the necessity of formally communicating to them the fact of its acceptance by him.

But this did not render acceptance on his part any less necessary than it would have been if no particular form of acceptance had been prescribed, for it is well settled that " a party cannot, by the wording of his offer, turn the absence of communication of acceptance into an acceptance, and compel the recipient of his offer to refuse it at the peril of being held to have accepted it." Clark Cont. 31, 32. " A person is under no obligation to do or say anything concerning a proposition which he does not choose to accept. There must be actual acceptance or there is no contract." *More* v*Insurance Co.*, 130 N. Y. 537, 547. And to constitute acceptance, " there must be words, written or spoken, or some other overt act." Bish. Cont., *s.* 329, and authorities cited.

If, therefore, the defendants might and did make their offer in such a way as to dispense with the communication of its acceptance to them in a formal and direct manner, they did not and could not so frame it as to render the plaintiff liable as having accepted it merely because he did not communicate his intention not to accept it. And if the plaintiff was not bound by the offer until he accepted it, the defendants could not be, because " it takes two to make a bargain," and as contracts rest on mutual promises, both parties are bound, or neither is bound.

The inquiry as to the defendants' liability for the non-performance of their offer thus becomes restricted to the question, Did the plaintiff accept the offer, so that it became by his action clothed with legal consideration and perfected with the requisite condition of mutuality? As, in morals, one who creates an expectation in another by a gratuitous promise is doubtless bound to make the expectation good, it is perhaps to be regretted that, upon the facts before us, we are constrained to answer the question in the negative. While a gratuitous undertaking is binding in honor, it does not create a legal responsibility. Whether wisely and equitably or not, the law requires a consideration for those promises which it will enforce; and as the plaintiff paid no premium for the policy which the defendants proposed to issue, nor bound himself to pay any, there was no legal consideration for their promise, and the law will not enforce it.

Then, again, there was no mutuality between the parties. All the plaintiff did was merely to determine in his own mind that he would accept the offer — for there was nothing whatever to

indicate it by way of speech or other appropriate act. Plainly, this did not create any rights in his favor as against the defendants. From the very nature of a contract this must be so ; and it therefore seems superfluous to add that the universal doctrine is that an uncommunicated mental determination cannot create a binding contract.

Nor is there any estoppel against the defendants, on the ground that the plaintiff relied upon their letter and believed they would insure his buildings as therein stated.

The letter was a representation only of a present intention or purpose on their part. " It was not a statement of a fact or state of things actually existing, or past and executed, on which a party might reasonably rely as fixed and certain, and by which he might properly be guided in his conduct. . . . The intent of a party, however positive or fixed, concerning his future action, is necessarily uncertain as to its fulfillment, and must depend on contingencies and be subject to be changed and modified by subsequent events and circumstances. . . . On a representation concerning such a matter no person would have a right to rely, or to regulate his action in relation to any subject in which his interest was involved as upon a fixed, certain, and definite fact or state of things, permanent in its nature and not liable to change. . . . The doctrine of estoppel . . . on the ground that it is contrary to a previous statement of a party does not apply to such a representation. The reason on which the doctrine rests is, that it would operate as a fraud if a party was allowed to aver and prove a fact to be contrary to that which he had previously stated to another for the purpose of inducing him to act and to alter his condition, to his prejudice, on the faith of such previous statement. But the reason wholly fails when the representation relates only to a present intention or purpose of a party, because, being in its nature uncertain and liable to change, it could not properly form a basis or inducement upon which a party could reasonably adopt any fixed and permanent course of action." *Langdon* v. *Doud,* 10 Allen 433, 436, 437 ; *Jackson* v. *Allen,* 120 Mass. 64, 79 ; *Jorden* v. *Money,* 5 H. L. Cas. 185.

" An estoppel cannot arise from a promise as to future action with respect to a right to be acquired upon an agreement not yet made." *Insurance Co.* v. *Mowry,* 96 U. S. 544, 547. " The doctrine has no place for application when the statement relates to rights depending upon contracts yet to be made, to which the person complaining is to be a party. He has it in his power in such cases to guard in advance against any consequences of a subsequent change of intention by the person with whom he is dealing." *Ib.* 548. See, in addition : *White* v. *Ashton,* 51 N. Y. 280 ; *Mason* v. *Bridge Co.,* 28 W. Va. 639, 649 ; *Jones* v. *Parker,* 67 Tex. 76, 81, 82 ; Big. Estop. (5th ed.) 574.

To sum it up in a few words, the case presented is, in its legal aspects, one of a party seeking to reap where he had not sown, and to gather where he had not scattered.

*Demurrer sustained.*

PEASLEE, J., did not sit : the others concurred.